UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT G. LOPEZ,                                    :
                                                    :
                            Plaintiff,              :
                                                    :           11 Civ. 4166 (RMB)
            -against-                               :
                                                    :           **DECISION & ORDER**
AEROPOSTALE, INC., et al.,                          :
                                                    :
                            Defendants.             :
------------------------------------------------------------X

**I.    Introduction**

On August 18, 2011, Robert G. Lopez ("Plaintiff" or "Lopez"), proceeding pro se, filed an amended complaint against Aeropostale, Inc., Aeropostale Procurement Co. (together, "Aeropostale"), the law firm Katten Muchin Rosenman, LLP ("Katten"), and Karen Artz Ash ("Ash," and collectively, "Defendants"), alleging trademark infringement and false designation of origin under the United States Trademark Act, 15 U.S.C. §§ 1114 et seq. ("Lanham Act") and New York State law.  Plaintiff contends that Aeropostale used without authorization Plaintiff's LOWER EAST SIDE mark and LES NYC mark (collectively, the "Marks") on Aeropostale t-shirts. (Compl., dated Aug. 18, 2011, ¶¶ 1–5.)  Plaintiff also alleges that Aeropostale's use of his LOWER EAST SIDE mark violates the terms of a May 5, 2011 settlement agreement between Aeropostale and Lopez ("Settlement Agreement").  (Compl. ¶¶ 66–78.)  Plaintiff also asserts state law claims of breach of contract, fraud, unjust enrichment, and conversion.  (See Compl. ¶¶ 63–83.)

On September 16, 2011, Defendants filed a motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that:  (1) Plaintiff fails to state a claim for trademark infringement under 15 U.S.C. § 1114

because he does not hold "federally registered trademarks"; (2) Plaintiff fails to state a claim for false designation of origin under 15 U.S.C. § 1125(a) because "the Settlement Agreement bars Lopez's claim with respect to the LOWER EAST SIDE" mark, and even if the claim were not barred, the LOWER EAST SIDE mark "is not . . . entitled to federal trademark protection," and Plaintiff's LES NYC mark cannot (plausibly) lead to a "likelihood of consumer confusion"; (3) Plaintiff's common law trademark infringement and unfair competition claims "are duplicative of his 15 U.S.C. § 1125(a) claim and are unsustainable for the same reasons"; (4) Plaintiff's unjust enrichment claim is derivative of his "defective" trademark and unfair competition claims; (5) Plaintiff fails to state a claim for breach of contract because Plaintiff "fails to identify any provision of the Settlement Agreement that Aeropostale . . . allegedly breached"; (6) Plaintiff fails to state a claim for fraud because it is "implausible that [Plaintiff] 'reasonably relied' on any alleged misrepresentation" by Defendants; and (7) Plaintiff fails to state a claim for conversion because Plaintiff "fails to allege that [he] was deprived of possession of, or the ability to use, his alleged trademarks."  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss, dated Sept. 16, 2011 ("Defs. Mem."), at 2–3, 14–15, 18.)

On October 14, 2011, Plaintiff filed an opposition stating, among other things, that: (1) Plaintiff's trademark infringement claim "should indeed be dismissed" because he does not hold federally registered trademarks; (2) the Settlement Agreement does not bar his claim for false designation, the LOWER EAST SIDE mark is "protect[ed]," and Plaintiff's LES NYC mark has already led to "several instances of 'actual confusion'"; (3) Plaintiff's common law trademark infringement and unfair competition claims are "sustainable" for the same reasons; (4) Plaintiff's unjust enrichment claim "is also sustainable for the same reasons"; (5) Aeropostale violated the terms of the Settlement Agreement by selling "t-shirt[s] bearing Plaintiff's LOWER

EAST SIDE" mark; (6) Defendants made misrepresentations of fact "for the purpose of convincing Plaintiff to act in reliance of said representations"; and (7) Plaintiff "believes" that he has been deprived of the exclusive possession and use of his trademarks. (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, dated Oct. 14, 2011 ("Pl. Opp'n") at 5–7.)

On October 28, 2011, Defendants filed a reply. (Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss, dated Oct. 28, 2011.) The parties waived oral argument.

**For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.**

## II. Background

For purposes of this motion, the facts in the Complaint are assumed to be true and are construed in the light most favorable to Plaintiff. See Cartier v. Micha, Inc., No. 06 Civ. 4699, 2007 WL 1187188, at *1 (S.D.N.Y. Apr. 20, 2007).

Lopez is the owner of a clothing company that sells, among other things, t-shirts, sweaters, and hooded sweatshirts displaying the Marks. (Compl. ¶¶ 14–15.) Lopez is the registered owner of the Marks under New York State Trademark Registration Nos. R31067 and R31259. Lopez does not have federal trademarks for his Marks. (Compl. ¶ 18.) Lopez alleges that his Marks have "acquired secondary meaning" based upon "his long standing and continuous use" of the Marks since 1997. (Compl. ¶¶ 14, 22.)

On March 24, 2011, Lopez initiated another lawsuit against Aeropostale alleging that Aeropostale "infringed [Lopez]'s rights in the LOWER EAST SIDE mark by selling . . . hooded sweatshirts" displaying the phrase LOWER EAST SIDE in violation of the Lanham Act and New York State law. (Compl. ¶ 24); see Lopez v. Aeropostale, No. 11 Civ. 2047 (S.D.N.Y.) ("Prior Action"). On April 8, 2011, Aeropostale's in-house counsel, Colette Stanford advised

Lopez by email that Aeropostale had "only produced 434 units of this style." (Compl. ¶ 27.) On May 2, 2011, Aeropostale's attorney, Ash, contacted Lopez to discuss settling the Prior Action. During their conversation, Ash also allegedly stated that Aeropostale "had only produced 434 units of any clothing items bearing Lopez's LOWER EAST SIDE" mark. (Compl. ¶ 32.) After several more discussions, on May 5, 2011, Ash emailed a draft settlement agreement to Lopez. (Compl. ¶¶ 33–34.) Later that same day, Plaintiff sent Ash his draft of the settlement agreement containing "minor revisions." (Compl. ¶ 35, Ex. I.) Plaintiff sought to include language in the Settlement Agreement that limited his release of claims to "all disposition or sale of previously manufactured Aeropostale products, which do not exceed 434 units of the [hooded sweatshirts]." (Compl. ¶¶ 35–36.) Ash responded in an email as follows:

> We agree that the disposition and sale of Aeropostale Products provided for in the Release relates to 'previously manufactured Aeropostale Products,' and your proposed language, to that effect, is incorporated in the attached. We cannot agree to the other proposed changes to this provision.

(Compl. ¶ 37; Decl. of Alan R. Friedman in Supp. of Defs.' Mot to Dismiss, dated Sept. 16, 2011 ("Friedman Decl."), Ex. G.) Ash emailed a revised draft of the settlement to Lopez which included Lopez's proposed language limiting his release to "all disposition or sale of previously manufactured Aeropostale products," but did not include the clause stating "which do not exceed 434 units of the hooded sweatshirts." (Compl. Ex. K.) Lopez advised Ash that the "latest changes to the Settlement Agreement . . . [were] acceptable to [him]." (Friedman Decl. Ex. G.) On May 5, 2011, the parties executed the Settlement Agreement which states, in relevant part:

> Release. [T]he parties . . . hereby mutually release and discharge the other . . . from all claims . . ., which either party ever had or has against the other, for upon, or by reason of any matter, cause or thing relating to the [Lower East Side] Mark, including as alleged in the [c]omplaint, and including all disposition or sale of previously manufactured Aeropostale Products.

4

(Compl. Ex. L. ¶ 4.) On May 5, 2011, Lopez voluntarily dismissed the Prior Action with prejudice. (See Stipulation of Dismissal, dated May 5, 2011 [#7], Docket No. 11 Civ. 2740.)

On or about June 19, 2011, Lopez was "contacted by a long-standing customer" about an Aeropostale t-shirt displaying the phrase LOWER EAST SIDE. (Compl. ¶ 43.) The customer "believ[ed] that the t-shirt was in fact produced and manufactured by [Lopez]." (Compl. ¶ 44.) That same day, Lopez visited two Aeropostale stores in Brooklyn and Manhattan, New York, respectively, and "purchased a LOWER EAST SIDE t-shirt." (Compl. ¶¶ 44–45.)

### III.     Legal Standard

The Court "read[s] the pleadings of a pro se plaintiff liberally and interpret[s] them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt, LLC, 11-3045-cv, 2012 WL 147919, at *1 (2d Cir. Jan. 19, 2012) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S.Ct. at 1949); Software For Moving, Inc. v. Frid, No. 09 Civ. 4341, 2010 WL 2143670, at *2 (S.D.N.Y. May 10, 2010).

To state a claim for trademark infringement under 15 U.S.C. §§ 1114, 1125(a), Plaintiff must "allege facts which establish that [its] mark merits protection and that Defendants' use of [its] mark is likely to cause consumer confusion as to the mark's source." Arnold v. ABC, Inc., No. 06 Civ. 1747, 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007) (citing Louis Vuitton

5

Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006)). "The classification of a mark is a factual question." Lane Capital Mgm't, Inc. v. Lane Capital Mgm't, Inc., 192 F.3d 337, 344 (2d Cir. 1999). Likelihood of confusion is also "a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006); see also Deere & Co. v. MTD Prods., Inc., No. 00 Civ. 5936, 2001 WL 435613, at *1 (S.D.N.Y. Apr. 20, 2001).

"Claims for . . . fraudulent inducement 'must allege . . . that [the plaintiff] reasonably relied on false representations made by [the defendants]." Meadowlands Investments, LLC v. CIBC World Markets Corp., No. 04 Civ. 7328, 2005 WL 2347856, at *6 (S.D.N.Y. Sept. 22, 2005) (quoting Fax Telecommunicaciones, Inc. v. AT&T, 138 F.3d 479, 490 (2d Cir 1998)).

**IV.   Analysis**

    **(1)   Trademark Infringement Claim under the Lanham Act**

Because Plaintiff concedes that he does not hold federally registered trademarks for his Marks, his federal trademark infringment claim is dismissed. See Greenwich Film Prods., S.A. v. DRG Records, Inc., No. 91 Civ. 0546, 1992 WL 279357, at *6 (S.D.N.Y. Sept. 25, 1992).

    **(2)   False Designation of Origin Claim under the Lanham Act**

Defendants argue, among other things, that Lopez's claim regarding the LOWER EAST SIDE mark is "defective" because "the claim was released in the Settlement Agreement," and because "the purported mark is not entitled to protection . . . because it is merely geographically descriptive and not a source identifier." (Defs. Mem. at 7.) Defendants also argue that "there is no basis for Lopez's allegation that the Aeropostale t-shirts are likely to cause consumer confusion" because the LES NYC mark and the Aeropostale t-shirts "have nothing in common." (Defs. Mem. at 12.)

Plaintiff counters that the t-shirts displaying the LOWER EAST SIDE mark are "newly manufactured Aeropostale [p]roducts that [are] not covered by the Settlement Agreement" which was limited to "previously manufactured products," and the LOWER EAST SIDE mark is used as a "brand name" and "source identifier" that has "acquired secondary meaning." (Pl. Opp'n at 12–13.) Plaintiff also argues that it is "plausible to believe that consumers who encounter the LES NYC mark in the marketplace . . . can likely be confused with [Aeropostale's] t-shirt[s]." (Pl. Opp'n at 14.)

Plaintiff's false designation claim under the Lanham Act may proceed through discovery. The release provision in the Settlement Agreement appears to relate to "previously manufactured Aeropostale Products," i.e., products manufactured before the May 5, 2011 Settlement Agreement.[1] (Compl. Ex. L.) When Aeropostale's t-shirts (which bear the LOWER EAST SIDE mark) were manufactured is a fact-laden topic for discovery. See Mason Tayler Medical Products Corp. v. Qwikstrip Products, L.L.C., No. 99 Civ. 177E, 2000 WL 432807, at *8 (W.D.N.Y. Apr. 14, 2000).

Plaintiff's allegations that his Marks have acquired a secondary meaning through his "continuous and exclusive use of the Marks since 1997"; that Defendants' use of a similar mark prompted a "long-standing customer" to contact Plaintiff; and that Aeropostale's use has created "actual confusion" are sufficient to avoid dismissal of his false designation claim under the Lanham Act. (Compl. ¶¶ 14–15, 22, 43–45, 55); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 343 (2d Cir. 1999) ("[A] plaintiff must establish that it possesses a valid, legally protectable mark and that defendant's subsequent use of a similar mark is likely to

---

[1]   Aeropostale Products are defined in the Settlement Agreement as "garments" Aeropostale has sold "under its AEROPOSTALE and AERO house marks, which . . . display the phrase 'LOWER EAST SIDE.'" (Compl. Ex. L.)

create confusion as to the origin of the product at issue."); Two Pesos. Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992) ("An identifying mark is . . . capable of being protected if it . . . has acquired distinctiveness through secondary meaning."); Courtenay Commcn's Corp. v. Hall, 334 F.3d 210, 215 (2d Cir. 2003); see Hearts on Fire Co., LLC v. L C Int'l Corp., No. 04 Civ. 2536, 2004 WL 1724932, at *3 (S.D.N.Y. July 30, 2004).  Defendants' argument that Plaintiff's LOWER EAST SIDE mark is descriptive and not entitled to protection under the Lanham Act is also a factual question, Lane Capital Mgmt., 192 F.3d at 344, as is the issue whether Plaintiff's Mark has acquired secondary meaning, In re Connecticut Mobilecom, Inc., No. 02-12725, 2003 WL 23021959, at *10 (S.D.N.Y. Dec. 23, 2003) ("[T]he issue of whether a [mark] has acquired secondary meaning is a question of fact and therefore not appropriately decided on a motion to dismiss.").  And, Defendants' argument that Plaintiff's LES NYC mark cannot (plausibly) give rise to a likelihood of confusion under the Lanham Act is also "a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Merck & Co., Inc., 425 F. Supp. 2d at 412; Quality Service Grp. v. LJMJR Corp., -- F. Supp. 2d --, 2011 WL 5570107, at *6–7 (S.D.N.Y. 2011); M. Shanken Comm'cns, Inc. v. Cigar500.com, 2008 WL 2696168, at *11 (S.D.N.Y. July 7, 2008) (likelihood of confusion "cannot be decided on a motion to dismiss").

### (3) Trademark Infringement & Unfair Competition Claims under New York Law

Because "[t]he standard for trademark infringement under the Lanham Act is similar to the standard for analogous state law claims," JA Apparel Corp. v. Abboud, 682 F. Supp. 2d 294, 309 n.13 (S.D.N.Y. 2010), the Court finds that Plaintiff has also stated a claim for trademark infringement and unfair competition under New York common law.  See e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 119 (2d Cir. 2006); Alzheimer's Foundation of Am., Inc. v. Alzheimer's Disease and Related Disorders Ass'n, Inc., 796 F. Supp. 2d 458, 467

8

(S.D.N.Y. 2011).

**(4)   Unjust Enrichment Claim**

Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because it "derives from Lopez's defective trademark and unfair competition claims."  (Defs. Mem. at 14.) Plaintiff counters that his unjust enrichment claim is "plausible" because Aeropostale has "continued to sell clothing bearing Plaintiff's Marks despite being aware of Plaintiff's rights in his [M]arks."  (Pl. Opp'n at 15.)

An unjust enrichment claim under New York law "requires that defendants be enriched; that the enrichment be at plaintiff's expense; and that defendant's retention of the benefits be unjust."  BigStar Entm't, Inc. v. Next Big Star, Inc., 105 F. Supp. 2d 185, 217 (S.D.N.Y. 2000).

Plaintiff's allegation that Aeropostale "profit[ed] from the sale of clothing . . . bearing Plaintiff's [Marks]"; that Aeropostale's profits were procured in violation of Plaintiff's rights and at Plaintiff's expense; and that Aeropostale "retained [the] profits from the sale of . . . goods" bearing his Marks, are sufficient to state a claim for unjust enrichment.  (Compl. ¶¶ 55–56, 64); see also Zip Int'l Grp., LLC v. Trilini Imps., Inc., No. 09 Civ. 2437, 2010 WL 648696, at *6 (E.D.N.Y. Feb. 22, 2010).

**(5)   Breach of Contract Claim**

Defendants argue that Plaintiff's breach of contract claim must be dismissed because "none of the provisions in the Settlement Agreement prevent Aeropostale from selling clothing bearing the LOWER EAST SIDE mark."  (Defs. Mem. at 15.)  Plaintiff counters that Aeropostale violated the terms of the Settlement Agreement by selling "new" t-shirts bearing Plaintiff's LOWER EAST SIDE mark because Aeropostale "has not provided any evidence to prove that [the] t-shirts w[ere] manufactured prior to the May 5, 2011 . . . Settlement

9

Agreement." (Pl. Opp'n at 16.)

"To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004).

Plaintiff has failed to state a claim for breach of contract. See Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358–59 (S.D.N.Y. 2001). Plaintiff fails to identify any provision of the Settlement Agreement that bars Aeropostale from selling t-shirts displaying the Marks. See CreditSights, Inc. v. Ciasullo, No. 05 Civ. 9345, 2008 WL 4185737, at *10 (S.D.N.Y. Sept. 5, 2008) ("New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms. None are so alleged."). The Settlement Agreement states that the neither party admits to any "liability, wrongdoing or . . . concession . . . as to the correctness of the position of the other" and does not appear to include an injunction prohibiting Aeropostale from engaging in commercial activity with respect to the Marks. (Compl. Ex. L); see also Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 392–93 (2d Cir. 2002); Shah v. Wilco Sys., Inc., 126 F. Supp. 2d 641, 652–53 (S.D.N.Y. 2000).

**(6)     Fraud Claim**

Defendants argue that Plaintiff's fraud claim must be dismissed because, among other reasons, Plaintiff did not "reasonably rely" on the alleged misrepresentations that Aeropostale "had only produced 434 units of any clothing items bearing Lopez's LOWER EAST SIDE" mark. (Defs. Mem. at 20–21.) Plaintiff counters that Plaintiff was "justified in relying on [the alleged mis]representations." (Pl. Opp'n at 16.)

"The elements of actual fraud under New York law are false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damages." Meadowlands

Investments, LLC v. CIBC World Markets Corp., No. 04 Civ. 7328, 2005 WL 2347856, at *5–6 (S.D.N.Y. Sept. 22, 2005).

Plaintiff has failed adequately to plead that he was fraudulently induced to sign the Settlement Agreement.  See Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514, 529–30 (S.D.N.Y. 2001).  Plaintiff's conclusory allegation that he relied on (alleged) misrepresentations that "Aeropostale only produced 434 units of any clothing items bearing Plaintiff's [Marks]" is not plausible.  (Compl. ¶¶ 71–72).  That is, while Plaintiff sought to include language that would limit his release in the Settlement Agreement "to 434 units of the [hooded sweatshirts]," Ash rejected Plaintiff's proposal in a May 5, 2011 email stating that "the disposition and sale of Aeropostale Products . . . relates to 'previously manufactured Aeropostale Products,'" and that they "could not agree to the other proposed changes," i.e., relating specifically to the 434 units of hooded sweatshirts.  (Compl. ¶¶ 35–36, Ex. I, K); see e.g., Nasik, 165 F. Supp. 2d at 530 (where the defendant "refused to agree to [the plaintiff's] proposal for a warranty provision").  The plain language of the Settlement Agreement did not include Lopez's proposed language limiting his release to the 434 hooded sweatshirts, and Lopez explicitly advised Ash that the "latest changes to the Settlement Agreement . . . [i.e., without mention of 434 hooded sweatshirts were] acceptable to [him]."  (Friedman Decl. Ex. G); see Scott-Macon, 2005 WL 1138476, at *12 (plaintiff's "reliance on [the defendant's] alleged misrepresentations during negotiations, which are directly contradicted by the plain language of the Agreement, was unreasonable and cannot sustain a claim . . . of fraudulent inducement"); Ng v. HSBC Mortg. Corp., No. 07-CV-5434, 2010 WL 889256, at *14 (E.D.N.Y. Mar. 10, 2010).

"The law does not relieve a person merely because he has failed to read a document which he has executed."  Humble Oil & Refining Co. v. Jaybert Esso Service Station, Inc., 294

N.Y.S.2d 190, 192 (N.Y. 1968); see also Scott-Macon Secs., Inc. v. Zoltek Co., No. 04 Civ. 2124, 2005 WL 1138476, at *12 (S.D.N.Y. May 12, 2005).

### (7) Conversion Claim

Defendant argues that Plaintiff fails to state a claim for conversion because "he does not allege that [D]efendants prevented Lopez from using or owning the trademarks himself." (Defs. Mem. at 22.) Plaintiff concedes that his conversion claim "may be questionable." (Pl. Opp'n at 7, 17.)

Among other reasons, Plaintiff's conversion claim is dismissed on the ground that it is duplicative of Plaintiff's claim for trademark infringement. See Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 368 (S.D.N.Y. 2009), aff'd 379 F. App'x 4 (2d Cir. 2010).

### IV.  Conclusion and Order

For the reasons set forth above, Defendants' motion to dismiss [#14] is granted in part and denied in part. Defendants' motion to dismiss the claims for false designation of origin under the Lanham Act, trademark infringement and unfair competition under New York law, and unjust enrichment is denied. Defendants' motion to dismiss the claims for trademark infringement under the Lanham Act, breach of contract, fraud, and conversion is granted.

The parties are directed to appear for a settlement conference on February 29, 2012 at 9:00 a.m. in Courtroom 21B of the United States Courthouse, 500 Pearl Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

Dated: New York, New York
       February 10, 2012





RICHARD M. BERMAN, U.S.D.J.

12